CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 24 2008

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| TAMMIE R. TRAIL, | ) | CASE NO. 3:07CV00038 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's March 22, 2004 claim for a period of disability and disability insurance benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416, 423 is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING plaintiff's motion for summary judgment, and REMANDING the case to the Commissioner for further proceedings under the fourth sentence of 42 U.S.C. § 405(g).

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) concluded that plaintiff had an alleged a disability onset date of November 17, 1989, had not engaged in substantial gainful activity during the relevant time period, and was insured for benefits through December 31, 1994. (R. 18, 20.) It was determined that her affective disorder was a severe impairment, yet not severe enough to

meet or equal a listed impairment, and that the alleged severity of her symptoms and limitations was not fully supported by the record. (R. 21, 23.) The Law Judge determined that plaintiff, a younger individual[1], retained the residual functional capacity ("RFC") to perform unskilled work at any exertional level. (R. 22, 24.) However, he also determined that she was moderately limited in her ability to maintain concentration, persistence, and pace, but she was capable of performing simple, repetitive tasks in an environment where she had minimal contact with others. (R. 22.) The Law Judge found that although this RFC precluded plaintiff from performing her past relevant work, other jobs existed in the national economy that she could perform. (R. 25.) Thus, the Law Judge ultimately found that plaintiff was not disabled under the Act. (R. 26.)

Plaintiff filed a timely request for review by the Appeals Council and submitted additional evidence in the form of an evaluation performed by Robert Muller, Ph.D. on August 22, 2006. (R. 6-9, 460-464.) The Appeals Council reviewed the additional evidence and determined not to accord significant weight to it because Dr. Muller's evaluation was performed long after plaintiff's insured status had expired.[2] (R. 7.) Accordingly, the Appeals Council determined that the evidence did not provide a basis for changing the Law Judge's June 12, 2006

---

[1] Plaintiff was thirty-two years old on her last insured date. (R. 24.) Under the Regulations, an individual less than fifty years old is a "younger person." 20 C.F.R. § 404.1563(c).

[2] The record shows that the Appeals Council adequately stated its reasons for declining to give Dr. Muller's August 22, 2006 evaluation significant weight. (R. 7.) *See Riley v. Apfel*, 88 F.Supp.2d 572, 580 (WD Va. 2000) (stating that in order for the court to provide a meaningful review, the Appeals Council needs to provide more than a "scant discussion" of the evidence). Whether the reasons provided by the Appeals Council are supported by the substantial evidence, or are consistent with the applicable legal principles, however, is another matter.

2

decision, and the request for review was denied. (R. 7.) Thus, the Law Judge's decision was adopted as the final decision of the Commissioner, and this action ensued.

In a memorandum filed in support of her motion for summary judgment[3] and a reply, plaintiff argues that the Appeals Council did not accord proper weight to the opinions offered by Dr. Muller. (Pl's Brief, pp. 7-11; Pl's Reply, pp. 3-5.) Specifically, she contends that although Dr. Muller's evaluation was performed after her date last insured, it relates back to the relevant time period. (Pl's Brief, p. 11.) Further, she argues that when Dr. Muller's evaluation is viewed in conjunction with testimony provided by the vocational expert ("VE"), it is evident that there were no jobs available to her. (Pl's Brief, pp. 9-11.)

The Regulations require the Appeals Council to review a case if the evidence is new, material, and relates to the period on or before the date of the Law Judge's decision. 20 C.F.R. § 404.970; *Davis v. Barnhart*, 392 F.Supp.2d 747, 750 (WD Va. 2005). Evidence is deemed "new" if it is neither duplicative nor cumulative, and it is "material" if a reasonable probability exists that the evidence would have changed the outcome of the case. *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); *Davis*, 392 F.Supp.2d at 750.

Dr. Muller, a licensed clinical psychological, evaluated plaintiff on August 22, 2006. (460-464.) He noted that she presented with a well-documented history of bipolar affective disorder, and that, although she had experienced periods of stabilization from the use of medication and her involvement with therapy, she continued to face difficulties caused by depression and her ability to adequately respond to stressors. (R. 460, 462.) Dr. Muller opined

---

[3]On January 8, 2008, plaintiff filed an amended motion to correct a clerical error contained in her motion. (Dkt. No. 11.)

3

Case 3:07-cv-00038-NKM-BWC   Document 17   Filed 04/24/08   Page 3 of 7   Pageid#: 83

that as a result of her bipolar affective disorder, underlying characterological difficulties, and the side-effects caused by her psychiatric medications, she would have marked difficulty tolerating ordinary work stressors. (R. 462.) Most significantly, Dr. Muller concluded that she would face marked limitations on her ability to complete a normal workweek without a significant interruption from psychologically-based symptoms. (*Id.*) Finally, Dr. Muller concluded that plaintiff had functioned at this level since November 1989,[4] and that her overall likely prognosis was poor. (*Id.*)

At the January 26, 2006 hearing before the Law Judge, the VE concluded that plaintiff's RFC precluded her from performing her past relevant work, but that other positions were available in the national economy that she could perform. (R. 490.) Specifically, he opined that she could work as a hand packer, cleaner/housekeeper, and stock clerk. (R. 491.) When questioned about the number of absences these positions would permit, the VE responded that the maximum number of absences normally permitted in such positions would be one, or possibly two absences, a month. (R. 492.)

Dr. Muller's opinion that plaintiff suffered marked limitations on her ability to complete a normal workweek without a significant interruption from her psychologically-based symptoms is "new" because it is neither duplicative nor cumulative of the other evidence of record. No other medical expert provided an express opinion about the impact of plaintiff's mental impairment on her ability to maintain regular attendance during the relevant time period.

The undersigned also finds that Dr. Muller's evidence is "material." When Dr. Muller's

---

[4]The relevant period before the court is November 17, 1989, plaintiff's alleged disability onset date, through December 31, 1994, plaintiff's date last insured.

4

opinion that plaintiff has suffered "marked" limitations on her ability to perform a normal workweek is viewed in conjunction with the VE's testimony that at most two absences would be permissible, there is no question that plaintiff would have been precluded from performing other jobs which exist in the national economy.

The Commissioner's argument that Dr. Muller's opinion is not worthy of credit is based on the fact that his evaluation occurred almost ten years after the date she was last insured, and the Commissioner's belief that the evidence that was adduced during the relevant time period shows that despite a few exacerbations, her mental impairment was well-controlled during the relevant time period. (Comm's Brief, p. 19.) The fact that Dr. Muller's assessment occurred almost ten years after her date last insured certainly is worthy of observing, but the Commissioner's inquiry should have gone further to consider whether plaintiff's then observed condition related back to the period during which she was insured. After all, Dr. Muller's opinion was formed after examining what he described as a very well-documented history of suffering with bipolar disorder. Moreover, while the Commissioner takes the position that plaintiff functioned fairly well during the relevant time period, that position is based upon isolated periods of stability essentially "cherry-picked" from the record.[5] The record shows that plaintiff was hospitalized for her mental impairments no less than three times during the relevant period. (R. 124.) One of these hospitalizations lasted from January 28, 1992 through February 21, 1992, a total of *twenty-five days*. (R. 127-132.) Upon admission on January 28, 1992,

---

[5] A bipolar affective disorder is an episodic impairment, and "stable" is a relative term with different connotations to be drawn from different contexts. As an example, "stable" for a teacher with the condition who is able to maintain employment and function in society would be different from "stable" for a homeless alcoholic who is unable to maintain employment on the basis of his/her bipolar affective disorder.

plaintiff was experiencing psychotic thinking and reported that the television was communicating with her, Dolly Parton was telepathically communicating with her, she was co-existing in heaven and at the hospital, she was god, her husband was the anti-Christ, and her son was the reincarnation of Jesus Christ. (R. 130-131, 134, 137.) Also, plaintiff's husband reported that she had informed him that she could no longer tolerate how she was feeling and asked that he just "shoot her." (R. 134.) It was determined upon admission and discharge from the hospital that her Global Assessment of Functioning ("GAF") was 20.[6] (R. 127, 139.) Finally, the admitting physician, John P.D. Shemo, M.D. opined that safety issues warranted her containment in the hospital. (R. 139.)

The Commissioner argues that plaintiff's disability claim is undermined by the fact that her alleged disability onset date corresponds with the birth of her son, and it had been her plan all along not to work after her son's birth. (Comm's Brief, p. 17.) The undersigned does not find this argument compelling. Admittedly, plaintiff's initial bipolar episode occurred just days after the birth of her son, but the record shows that she experienced a postpartum psychotic episode and generally a significant deterioration in functioning following the birth of her son. (R. 139.)

In the end, the undersigned is of the view that the Commissioner failed to fully and fairly review the extent to which Muller's 2006 evidence should relate back to the relevant time period. Thus, the case should be remanded for further proceedings. The remand should direct that, in the

---

[6]The GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed 2000) (*DSM-IV*). A GAF score in the range of 11-20 indicates some danger of hurting self or others, or occasionally fails to maintain minimal personal hygiene, or gross impairment in communication. *Id.* at 34.

6

event the Commissioner is unable to determine on the extant record that plaintiff's disability relates back, he is to recommit the case for further evidentiary proceedings on the issue at which both sides may introduce additional evidence

For the foregoing reasons, it is RECOMMENDED that an Order enter GRANTING plaintiff's motion for summary judgment, and REMANDING the case to the Commissioner for further proceedings under the fourth sentence of 42 U.S.C. § 405(g).

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
U.S. Magistrate Judge

April 24, 2008
Date